INHABITANTS OF CORINTH *versus* INHABITANTS OF LINCOLN.

Declarations, made by a third person, when in the performance of an act, and illustrative of its purpose, are admissible in evidence as a part of the act.

In order to the admission of declarations in evidence as a part of an act, the act must have a tendency to establish the allegations which the party undertakes to sustain.

Evidence that a person, after performing various jobs of labor in the line of his business, in the same and in neighboring towns, occasionally returned to the house of a particular family, where he stayed while out of employment, has no tendency to prove that he had acquired a *residence* in that family.

His declarations, therefore, made when in the acts of such returnings, that he was going to that house as his home, are inadmissible.

Corinth *v.* Lincoln.

Where the only evidence to establish the *residence* of a pauper, showed that his home was in a particular family, it is not erroneous in the Judge, to instruct the jury that, in order to justify them in finding a *residence*, it must be proved that he was a member of that family.

No one can become a member of another person's family, so as thereby to gain a *residence* within the meaning of the pauper laws, unless *voluntarily*, and *by consent of the family.*

If, while a person is a member of another's family, pauper supplies are furnished to the family, it will be considered that supplies are furnished to him, even though of full age, and not subject to the control of any of the family.

Where the only evidence of supplies being furnished to one who had called for relief, was that such articles were *sent* by the overseers of the poor, it is for the jury to decide whether they were received.

ON EXCEPTIONS from *Nisi Prius*, SHEPLEY, C. J. presiding.

ASSUMPSIT for supplies furnished to Clarissa Bodge, as a pauper, in 1846. In 1829, she derived from her father a settlement in Lincoln. Whether she afterwards acquired a new settlement in Corinth, was the question raised in the case. In 1839, being then more than twenty-one years of age, she went from Fayette, (where she had been residing,) to the dwellinghouse of her father, who then lived in Corinth, and there made his house her stopping place.

The defendants were allowed to prove that, when upon the journey, she declared it was her purpose to *reside* permanently in her father's family.

After thus going to Corinth, she labored for wages at different places in that and in neighboring towns, occasionally returning to her father's house, where she sometimes left her trunk and such other articles as she did not have occasion to carry with her.

The defendants having proved her to be now insane and incapable of giving testimony, offered evidence of her declarations, made when going from her places of labor to her father's, to prove that she considered her home to be at his house. This evidence, being objected to, was excluded.

To dislodge the effect of such residence, (if she acquired one in Corinth,) the plaintiffs proved that, by their overseers of the poor, they supplied needful relief to the family of her

father; and that, at her parent's request, they sent to her a pair of shoes at the expense of the town; the overseers not remembering by whom they were sent. There was no other proof in relation to the shoes.

The Judge instructed the jury *that*, in order to the gaining of a settlement in Corinth by five years residence, Clarissa must have, voluntarily and by the consent of her parents, made herself a member of her father's family; and *that* the same kind of residence, which would be necessary to fix her settlement in Corinth, would make her subject to be affected by the supplies furnished to her father.

The defendants' attorney requested instruction to the jury;

1. That supplies furnished to the father could not affect the settlement of Clarissa, though living at the time in his family, if she was then of age and not subject to his control.

2. That, from the evidence, the jury were not warranted in finding that the pauper received the pair of shoes.

In giving the first requested instruction, the Judge added to it the words, " *or voluntarily a member of his family.*"

He refused to give the second requested instruction, but submitted to the jury the question, whether the evidence satisfied them that Clarissa received the shoes.

The verdict was for the plaintiffs, and the defendants excepted.

*A. W. Paine*, for the defendants.

*J. & M. L. Appleton*, for the plaintiffs.

TENNEY, J. — The declarations of a party to a transaction, made at the time of the acts done, and expressive of their character, motive or object, are regarded as " verbal acts, indicating a present purpose and intention," and are therefore admitted in proof, like any other material facts. They are a part of the *res gestæ*. 1 Greenl. Ev. § 108; *Gorham* v. *Canton*, 5 Greenl. 266; *Baring* v. *Calais*, 2 Fairf. 463. But declarations cannot with propriety be received as evidence, unless the act which the declarations accompany, has itself a material bearing upon the issue presented; for the act is

the principal fact, and the declarations are received, as tending to exhibit the purpose of the agent, which prompted it, and was productive of the act done.

The defendants did not deny the settlement of the pauper in their town, derived from her father, who resided there at the time of the Act of incorporation. The ground taken in defence was, that the pauper moved into the town of Corinth, after she became twenty-one years of age, and lived there for the space of five years together. This proposition of the defendants they were required to sustain by proof, or fail in the defence. It was necessary, that it should appear, that she resided there during that period, with the intention of making that place her home. When she was in the act of coming into the town of Corinth, from another town, where she had been residing, the design of making it her home, or as a place, where she proposed to remain temporarily, for a certain specific purpose only, might be known in some measure by the declaration of her object, accompanying the act. The act itself might be precisely the same in one case as in the other. After she was found in the town of Corinth, working in different places therein, or in neighboring towns, the acts of passing from one house to another, in the prosecution of her ordinary business, were not evidence to show that she had come into that town from some other ; that act had already transpired, and her subsequent declarations could not add force or give character to a transaction, which was before complete. They were not a part of the *res gestæ* ; were not acts, in the least indicative of a design at that time to change her residence from one town to another, or as going into the town of Corinth as the place of her home. Such declarations could have no greater effect, than those made, when she might be passing to and from church or public meetings, or in going from one part to the other of the house or appendages, where she was at the time boarding. The act itself not being one expressive in the least, of an intention of living in one town rather than another, but only indicating to what place in the town she might be going, either as her per-

manent place of abode or otherwise, for that particular time, the declarations accompanying such acts could not on any principle be held admissible.

The defendants insist, that the instruction to the jury " that in order for them to find, that Clarissa, [the pauper,] had gained a settlement in Corinth by five years residence, they must be satisfied, that she had voluntarily, and by mutual consent of her parents and herself made herself a member of her father's family," was erroneous. The legal correctness of instructions must be determined in some measure by the propositions of fact attempted to be supported by the evidence at the trial. From the case before us, it appears that the defendants did not undertake to prove that the pauper moved into the town of Corinth with the design of making the town as such her home for an indefinite period of time. If such had been their attempt, and proof had been introduced, for that purpose, it might not have been material that the place of her residence should have been one, where she had a legal right to remain, by being the owner of the house, or by a mutual understanding between the owner thereof and her, that she should occupy it. But the case finds, that the plaintiffs introduced evidence to prove, and the defendants to disprove, that in June, 1839, she being then of age, the pauper moved into Corinth with the intention thenceforward to make her home at her father's house in that town. Her object, as proposed to be proved, was to find a home in the family of her father ; the fact that his house was in the town of Corinth, had no influence upon her mind, in forming the design to live with him. She is not represented as having a wish to make any other place in that town her residence ; or to remain there for any other purpose than to be an inmate in his own family. Consequently in order to constitute a settlement in the town by a residence of five years together, it must appear that she had her home at her father's house. What was necessary to make his house her home ? Home, when restricted to the house of a person's residence, must be the place where he has the design and the right for the time

Corinth *v.* Lincoln.

being, to abide, connected with actual residence. This necessarily involves the idea of a voluntary intention to occupy the place on the part of the inmate and a voluntary consent, to that occupation, on the part of the one who has the control. Notwithstanding such might have been her wish and intention, accompanied by the personal presence of the pauper, at her father's house, unless she resided there by his permission, in some manner manifest, it could not in any sense be regarded as her home.

Exceptions are taken to the instructions, "that the same kind of residence, which would be necessary to fix the pauper's settlement in Corinth, would make her subject to be affected by supplies furnished to her father." If the pauper's residence was in her father's family, and in common with the other members of it, in the sense which has been considered necessary to constitute it her home, the destitution of her father, which made it proper that he should be relieved by the town, would apply to her, and the supplies must be treated as furnished to both. If the supplies were furnished on the application of the father, and she being in his family by her own wish and his consent, partook of them, they were indirectly furnished for her relief. Supplies obtained on the request of her father, of which she partook, when she was compelled to be in his family against her wishes, and when she could have lived elsewhere, if left unrestrained, could not make her a pauper; neither would she be considered as having relief from the town, if she took, against the consent of her father, the supplies which were furnished on his application and exclusively for his relief.

The instructions, which were first requested, and given with the qualification of the Judge, were substantially a repetition of the general instruction, which had been previously given, and without the qualification would have been incorrect.

The second instruction requested was properly withheld, it being upon a subject, which was wholly for the consideration of the jury. In the opinion of a majority of the Court, the

*Exceptions must be overruled.*